The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 * * * * * * * * * * * ISSUES
1. Whether Plaintiff is entitled to reinstatement of indemnity compensation? *Page 2 
2. Whether Plaintiff is barred from receiving further indemnity compensation pursuant to N.C. Gen. Stat. § 97-32?
3. To what, if any, further compensation is Plaintiff entitled?
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all relevant times.
3. Defendant-Employer was insured (or self-insured) for workers' compensation coverage at all relevant times.
4. Plaintiff's average weekly wage is $383.07 with a compensation rate of $255.39.
5. Deputy Commissioner J. Brad Donovan issued an Opinion and Award on July 7, 2008 awarding temporary total disability (TTD) compensation to Plaintiff in the amount of $255.39 per week beginning May 11, 2006, and continuing.
6. Plaintiff returned to work pursuant to an Industrial Commission Form 28T on August 25, 2008, and continued to be employed until March 22, 2009, when he voluntarily left his position.
7. Plaintiff filed an Industrial Commission Form 28U signed by his family doctor (not the authorized treating physician) on April 22, 2009.
8. Defendants have not reinstated TTD compensation.
 * * * * * * * * * * * EXHIBITS *Page 3 
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Plaintiff's medical records
 • Exhibit 3: Defendants' discovery responses
 • Exhibit 4: Personnel file
 • Exhibit 5: Social Security disability documentation
 • Exhibit 6: FMLA certifications
 • Exhibit 7: Job descriptions
 • Exhibit 8: Pay stubs
 • Exhibit 9: Plaintiff's discovery responses
 • Exhibit 10: Transcript of deposition of Dr. Cammarata dated 3/17/08
 • Exhibit 11: Industrial Commissions Forms 33, 33R and 28U
 • Exhibit 12: Correspondence between counsel
 • Exhibit 13: Records of Plaintiff's hours worked
Transcripts of the depositions of the following were also received post-hearing:
 • Dr. Charles Murray
 • Dr. James J. Hoski (with Plaintiff's Exhibits 1-3)
 • Dr. Jesse L. West, IV (with Plaintiff's Exhibit 1 2)
 • Charlie Robbins, LPT (with Plaintiff's Exhibits 1 2)
 • Dr. James McCarrick (with Plaintiff's Exhibit 1)
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff is 52 years of age, with a date of birth of October 28, 1958. Plaintiff began working for Defendant-Employer in December 2004 as a stock worker. Plaintiff's work history includes working for Beacon Manufacturing Company for 24 years and working in various jobs since the age of 10.
2. Plaintiff sustained admittedly compensable injuries to his back and left elbow on August 18, 2005, while working for Defendant-Employer as a stocker.
3. Dr. Angelo Cammarata treated Plaintiff for his compensable left elbow injury and performed an arthroscopy. As of April 28, 2006, Dr. Cammarata found Plaintiff to have reached maximum medical improvement (MMI) for his compensable left elbow condition and assigned a six percent permanent partial impairment (PPI) rating for Plaintiff's left arm. Dr. Cammarata released Plaintiff to return to full duty work without restrictions.
4. In his July 8, 2008 Opinion and Award, Deputy Commissioner Donovan concluded that Plaintiff had also sustained a separate compensable aggravation of his compensable back injury on May 11, 2006, while working for Defendant-Employer as a stocker. Deputy Commissioner Donovan awarded Plaintiff continuing temporary total disability compensation
5. Plaintiff treated with Dr. James Hoski for his back condition following the May 11, 2006 injury. Plaintiff complained of low back pain and left leg pain. An MRI showed a disk herniation at L5-S1, and Dr. Hoski diagnosed the left leg pain as radicular in nature.
6. On June 22, 2006, Dr. Hoski performed surgery to address the herniation at L5-S1. *Page 5 
7. On May 11, 2007, Plaintiff returned to Dr. Hoski with complaints of recurrent leg pain. Dr. Hoski ordered an MRI, which showed some irritation of the nerve but no evidence of a herniated disk or nerve root compression. Dr. Hoski concluded that Plaintiff's left leg complaints were now likely due to degenerative arthritis and that this condition did not warrant surgical intervention. Dr. Hoski referred Plaintiff to a pain management specialist, Dr. White.
8. On July 9, 2007, Dr. White recommended that Plaintiff continue with conservative treatment such as medication.
9. On November 14, 2007, at his first deposition in this matter, Dr. Hoski opined that Plaintiff had reached MMI for his compensable back condition and assigned a 10 percent PPI rating. Dr. Hoski also approved the "people greeter" position with Defendant-Employer as being physically suitable for Plaintiff.
10. In the July 8, 2008 Opinion and Award, Deputy Commissioner Donovan also designated Dr. Hoski as the authorized treating physician for Plaintiff's compensable back condition, upon Plaintiff's motion. Plaintiff had initially treated with Dr. Goebel for his compensable back injury.
11. In August 2008, Defendant-Employer offered Plaintiff a position as a people greeter, and Plaintiff accepted a full-time position as an "overnight people greeter." When Plaintiff returned as a people greeter, he was paid $1.00 less per hour than in his pre-injury job and was not provided the benefits he had prior to injury.
12. According to Defendant-Employer's job description, in the people greeter position Plaintiff was physically required to, among other things, provide shopping carts to customers by pushing or pulling up to 10 pounds of pressure, frequently lift items up to 10 pounds without assistance, and regularly lift items over 10 pounds with assistance. *Page 6 
13. After Plaintiff began working as a people greeter for Defendant-Employer, in addition to his standard greeter duties, he was also required to maintain the front area of the store, which included keeping the windows and the drink and game machine area clean. In doing these tasks, Plaintiff sometimes had to shove the drink and game machines in order to clean around them. While Plaintiff may at times have lifted more than 10 pounds in performing his duties, he was always allowed to ask for assistance. Defendant-Employer never required Plaintiff to work outside of his restrictions.
14. Plaintiff was allowed to ask for and did receive assistance from Defendant-Employer's maintenance personnel whenever he felt he needed help to do his job.
15. Plaintiff testified that during the time that he worked in the people greeter position from August 25, 2008 through March 22, 2009, his back and left elbow pain progressively worsened. He did not miss work, nor did he ever inform anyone with Defendant-Employer that his pain was worsening or that he believed he was being asked to perform duties outside the people greeter job description.
16. Although Plaintiff was not able to recall the exact date, one night in January 2009, Defendant-Employer was short-staffed because of a snowstorm. Plaintiff was asked to retrieve shopping carts from the parking lot. Plaintiff had to make many trips to bring in the carts, and in doing so he slipped and slid around. Plaintiff alleged that he developed severe left knee pain during this incident. Plaintiff never reported his alleged left knee injury to Defendant-Employer and never filed an Industrial Commission Form 18, Notice of Accident to Employer and Claim of Employee,Representative, or Dependent, for a left knee injury.
17. Defendants were first notified about the alleged January 2009 left knee injury at the January 22, 2010 hearing before the Deputy Commissioner when Plaintiff testified about it. *Page 7 
18. Plaintiff testified that he did not file a new workers' compensation claim for his alleged left knee injury because he did not realize it was serious or specific to his left knee. He acknowledged that he had been involved in two prior workers' compensation hearings but testified that he did not recall notice issues being brought up in the hearing for the May 11, 2006 claim.
19. On January 27, 2009, Plaintiff saw Dr. Hoski and reported low back pain and left leg pain, but did not complain specifically of left knee pain or of any incident. Dr. Hoski performed a physical exam of Plaintiff, including his left leg, and, in doing so, he did not note any pain, crepitus, or instability during passive range of motion of Plaintiff's left knee.
20. Plaintiff testified that after the alleged January 2009 left knee injury, he continued to have left knee pain and swelling.
21. On March 18, 2009, Plaintiff was approved for Social Security disability benefits based on his medical conditions of degenerative disc disease, pain in his back, chest, hips, joints, elbows and knees, anxiety, depression, cardiomyopathy, and headaches.
22. After finishing his shift on March 22, 2009, Plaintiff did not return to work for Defendant-Employer.
23. Plaintiff testified that he decided to quit the greeter position because of his left knee pain and worsening back pain. He testified that the pain in his left knee and back as of March 22, 2009 was "unbearable" and that he could not handle standing for eight hours.
24. Plaintiff returned to Dr. Hoski on March 25, 2009. Again, Plaintiff did not report any injury, pain, swelling, or other symptoms in his left knee. Plaintiff last treated with Dr. Hoski in these claims on September 29, 2009. *Page 8 
25. Plaintiff testified that, during his time as a greeter, he had to take three or four Vicodins per shift and that he would go to his car and take naps during his breaks. However, Dr. Murray testified that he prescribed Plaintiff only 90 Vicodins per three-month period and that Plaintiff was generally able to make that supply last.
26. As of the January 22, 2010 hearing before the Deputy Commissioner, Plaintiff had not worked anywhere since March 22, 2009, and there was no evidence presented showing he had looked for work since that date.
27. On April 22, 2009, Plaintiff filed an Industrial Commission Form 28U signed by Dr. Murray, his primary care provider, stating that he could no longer work because of "Chronic low back pain, left knee swelling and pain from standing. Inability to stand more than one hour."
28. On April 3, 2009, August 24, 2009, October 7, 2009, and November 20, 2009, Dr. Murray signed a series of FMLA certifications that Plaintiff presented to Defendant-Employer. Each of these forms stated that Plaintiff had knee pain that began on March 22, 2009. Dr. Murray testified that Plaintiff reported to him that his left knee pain had begun on March 22, 2009.
29. On November 19, 2009, Plaintiff treated with Dr. Jesse West for his left knee condition. Dr. West diagnosed Plaintiff with a meniscus tear and performed arthroscopic surgery to repair it on December 9, 2009. Afterward, Plaintiff underwent physical therapy. On February 19, 2010, Dr. West released Plaintiff from treatment and released him to return to full duty work without restrictions related to his left knee.
30. Dr. Charles Murray, a general practitioner who is now retired, started seeing Plaintiff in 2002, and the main health issue for which he treated Plaintiff over the years was sleep *Page 9 
apnea. Dr. Murray noted that Plaintiff's obesity is his primary physical problem and is the root cause of most of his chronic health problems and his disability.
31. Dr. Murray felt that Plaintiff was disabled from doing any work because of his chronic back pain and occasional other pain, including left knee pain. However, he testified only that it was possible that the back symptoms for which he treated Plaintiff up until his retirement in late 2009 were related to Plaintiff's compensable back injuries. He also testified only that it was possible that the left knee symptoms for which he treated Plaintiff were related to the alleged January 2009 injury.
32. Dr. Murray was not familiar with the requirements of the greeter position, but he felt that Plaintiff could do the job if he could sit and stand at will.
33. Dr. Murray felt that secondary gain was an issue with Plaintiff.
34. Dr. Hoski is an orthopedic spine surgeon. He testified that the June 2006 surgery resulting from the May 2006 work injury was successful in relieving Plaintiff's left leg pain, and Plaintiff did well after the surgery. Dr. Hoski further testified that the recurrence of Plaintiff's left leg pain months after the surgery was unrelated to his compensable disk herniation and was most likely related to degenerative changes.
35. Dr. Hoski had no opinion as to whether Plaintiff injured his left knee on or about January 2009. The Full Commission finds that the evidence is insufficient to prove that Plaintiff sustained a work related injury to his knee in January 2009.
36. With regard to Plaintiff's compensable back condition, Dr. Hoski believed that Plaintiff could still do the people greeter job and he would not have executed a Form 28U indicating an unsuccessful trial return to work with regard to the back condition for which he treated Plaintiff. *Page 10 
37. The Full Commission finds by the greater weight of the evidence that Plaintiff's job as a night people greeter for Defendant-Employer was suitable employment and this job would have continued to be available to Plaintiff had he not voluntarily quit.
38. As of the January 22, 2010 hearing before the Deputy Commissioner, Plaintiff still complained of back pain and left elbow pain.
39. Further medical treatment for Plaintiff's compensable back and left elbow conditions is reasonably required to effect a cure and/or provide relief for Plaintiff.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not shown by the greater weight of the evidence that he sustained a compensable injury to his left knee in January 2009. N.C. Gen. Stat. § 97-2(6). Even if it were concluded that Plaintiff sustained a left knee injury by accident arising out of and in the course of his employment with Defendant-Employer on some unspecified date in January 2009, such claim would be barred by Plaintiff's failure to provide timely written notice of the accident to Defendants and his failure to show a reasonable excuse for not having done so. N.C. Gen. Stat. § 97-22.
2. Plaintiff has not shown, by the greater weight of the evidence, that he is disabled because of his compensable back or left elbow injuries under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(9).
3. If an injured employee refuses employment procured for him, which is suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of *Page 11 
such refusal, unless in the opinion of the Commission such refusal was justified. N.C. Gen. Stat. § 97-32. Defendants have shown, by the greater weight of the evidence, that Plaintiff unjustifiably refused suitable employment when he voluntarily quit the greeter job on March 22, 2009, and Plaintiff is thus not entitled to any further TTD compensation during the continuance of the refusal. Id. By the greater weight of the evidence, the Full Commission finds that Plaintiff's leaving the greeter job was unrelated to his compensable injuries and that any continuing inability on Plaintiff's part to do the greeter job is unrelated to his compensable injuries. Id.
4. As Plaintiff's Industrial Commission Form 28U was not completed by an authorized treating physician, Defendants were not required to resume payment of TTD compensation upon its filing. N.C. Gen. Stat. § 97-32.1; N.C.I.C. Rule 404A.
5. Plaintiff is entitled to have Defendants continue to provide him with medical treatment for his compensable back and left elbow conditions. However, by the greater weight of the evidence, Defendants have successfully rebutted the presumption that further treatment for Plaintiff's left leg symptoms is related to his compensable back injuries, and Plaintiff is thus not entitled to have Defendants provide him with any further treatment for any left leg symptoms. N.C. Gen. Stat. §§ 97-2(19); 97-25; Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for further TTD compensation is hereby DENIED. *Page 12 
2. Any claim for compensation for Plaintiff's left knee condition is DENIED.
3. Subject to the limitations period of N.C. Gen. Stat. § 97-25.1, Defendants shall provide Plaintiff with such further treatment for his compensable back condition (but not left leg pain) and left elbow condition as is reasonably required to effect a cure and/or provide relief.
4. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to each of the following providers, in the amount shown or the amount actually billed, whichever is less: $1,062.00 to Dr. Murray; $826.50 to Dr. Hoski; $826.50 to Dr. West; $208.00 to Mr. Robbins; and $432.00 to Dr. McCarrick.
This the ___ day of July, 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1